UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| DAVID FRANKLIN WEST,<br><br>    Plaintiff,<br><br>    v.<br><br>DAVID OSTER, et al.,<br><br>    Defendants. | Case No. C06-1453-JCC-JPD<br><br>REPORT AND RECOMMENDATION |

## I. INTRODUCTION AND SUMMARY CONCLUSION

Plaintiff David Franklin West, an inmate at the Snohomish County Jail, is proceeding *pro se* and *in forma pauperis* in this 42 U.S.C. § 1983 civil rights complaint against several employees of the Snohomish County Jail located in Everett, Washington. Plaintiff asserts that the defendants violated his rights under the Eighth and Fourteenth Amendments by failing to provide him with proper medical and dental treatment, and violated his Fifth Amendment rights by not allowing for his release from custody. Dkt. No. 10. Plaintiff seeks damages in the amount of $250,000. Dkt. No. 6 at 7. The present matter comes before the Court on defendants' Motion for Summary Judgment. Dkt. No. 28. In it, defendants assert that they are entitled to qualified immunity, and argue that because plaintiff failed to demonstrate "deliberate indifference" on the part of the named officers, his Eighth Amendment claim fails as

REPORT AND RECOMMENDATION
PAGE – 1

a matter of law.[1] Additionally, the defendants argue that four of plaintiff's claims are barred by the Prison Litigation Reform Act, 42 U.S.C. § 1997(e)(a), for want of exhaustion. Finally, defendants insist that plaintiff's complaint is frivolous and request that it count as a "strike" pursuant to 28 U.S.C. § 1915(g). After careful consideration of the motion, response, supporting materials, governing law, and the balance of the record, the Court recommends that defendants' Motion for Summary Judgment be GRANTED and plaintiff's case DISMISSED with prejudice.[2]

## II. FACTS AND PROCEDURAL BACKGROUND

Plaintiff and defendants are not strangers. Plaintiff has been incarcerated at the Snohomish County Jail no fewer than six times in the past year—recently from September 4, 2006 through October 26, 2006; March 1, 2007 through March 11, 2007; March 20, 2007 through April 9, 2007; April 10, 2007 through May 4, 2007; May 31, 2007 through mid-June, 2007; and July 10, 2007 through the present date.[3]

---

[1] Defendants' Motion for Summary Judgment also seeks dismissal of plaintiff's claim regarding access to the law library and his vague due process claim against Snohomish County. Dkt. No. 28 at 14-17. However, these claims no longer exist, having been dismissed on February 2, 2007, pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii). *See* Dkt. No. 12 at 2-3. To the extent a vague due process claim remains against the individual defendants, plaintiff failed to respond to it in his opposition to the defendant's motion for summary adjudication. Accordingly, defendants's motion regarding that claim is treated as uncontested pursuant to Local Rule CR 7(b)(2), and the claim is dismissed by operation of Fed. R. Civ. P. 56(e). Finally, plaintiff's passing statement that he be released from custody is not cognizable in a § 1983 action such as this. *See Heck v. Humphrey*, 512 U.S. 477, 489 (1994) (holding that a § 1983 claim that calls into question the lawfulness of a plaintiff's conviction or confinement does not accrue "unless and until the conviction or sentence is reversed, expunged, invalidated, or impugned by the grant of a writ of habeas corpus.").

[2] The Court neither address nor adjudicates claims made in a different lawsuit (C07-617-RSL-JPD) that plaintiff appears to reference, for the first time, in his summary judgment response. *See, e.g.*, Dkt. No. 41 at 13-15. That information is irrelevant with respect to this lawsuit.

[3] While plaintiff appears to assert his right to be released from custody, a declaration provided by the defendants states that plaintiff has informed Snohomish County Jail staff that because he is homeless, he intends to live in the Snohomish County Jail indefinitely by continuously violating this parole. *See* Dkt. No. 29 at 4, ¶ 10 (Oster Decl.).

REPORT AND RECOMMENDATION
PAGE – 2

01         On September 4, 2006, after a 3,000-mile bus ride from Houston, Texas, plaintiff
02 arrived at the Snohomish County Jail, where he surrendered himself on a 2002 Washington
03 State warrant.  At booking, plaintiff was asked routine questions regarding medical care and
04 current medications.  Plaintiff's answers to these questions are hotly disputed by the parties.
05         According to the plaintiff, he notified the booking officer that he severely injured his
06 neck and back in a 1998 automobile accident and suffered from Attention Deficit Hyperactivity
07 Disorder ("ADHD") and post-traumatic stress syndrome ("PTSD"), for which he was
08 previously prescribed a 125 milligram dosage of Amitriptyline, a tricyclic antidepressant.  Dkt.
09 No. 41 at 3.  Plaintiff also notified the booking officer that he had two "broken teeth," and was
10 in serious need of dental care.  *Id.*  Defendants, however, insist that when asked whether he
11 was receiving any medications, had any pain issues or mental health problems, plaintiff
12 answered in the negative, although he did advise the booking officer that he was allergic to
13 penicillin.  *See, e.g.*, Dkt. No. 30 at 4, ¶ 8 (Behner Decl.).
14         It is undisputed, however, that beginning September 5, 2006—the day after he was
15 admitted—plaintiff began filing multiple service "kites"[4] and grievances with Snohomish
16 County Jail ("Jail") officials.  On September 13, 2006, a mental health evaluation of plaintiff
17 was performed on plaintiff in response to one such kite.  *Id.*  Upon conclusion of that
18 evaluation, plaintiff was referred to a psychiatric nurse to determine his medication history and
19 to place him on the Jail's psychiatric provider appointment list.  *Id.*  On October 10, 2006,
20 defendant (and Psychiatric Nurse Practitioner) Nikki Behner evaluated plaintiff, prescribed him
21 Amitriptyline, and provided him with an extra pillow for increased neck support.  *Id.* at 5, ¶ 8.
22 Defendant Behner also scheduled plaintiff an additional independent psychiatric consultation
23 for the following day, at which time plaintiff was prescribed Prazosin for recurring nightmares
24 related to his PTSD, and was scheduled for a follow-up exam to take place three weeks later.
25 Dkt. No. 30 at 5, ¶ 8.  However, because plaintiff was released on October 28, 2006, that
26

---

        [4] "Kite" is a shorthand term used for a jail services request form.

REPORT AND RECOMMENDATION
PAGE – 3

follow-up exam never took place.

Plaintiff was again seen by a Jail nurse on September 22, 2006—one day after plaintiff filed a dental kite complaining of broken teeth and serious pain. *See* Dkt. No. 30 at 4, ¶ 7; Dkt. No. 33, Ex. B at 1.[5] The nurse found decay and a chipped tooth, prescribed the antibiotic Keflex and the anti-inflammatory ibuprofen until such time plaintiff could be seen by a dentist, and scheduled plaintiff (as a "Priority 2") for the first available appointment on the next Jail "dental visit day." Dkt. No. 30 at 4, ¶ 7. That moment came five days later, when plaintiff was examined by Dr. Allan S. Baker, D.D.S. Dkt. No. 31 at 3, ¶ 5 (Baker Decl.). Dr. Baker x-rayed plaintiff's mouth, performed a simple extraction of teeth #2 and #12, and prescribed Vicodin for pain and Keflex for antibiotic purposes. *Id.*; Dkt. No. 41 at 8. On October 1, 2006, plaintiff was given Tylenol for "extract dental pain," and was scheduled for another appointment with Dr. Baker. Dkt. No. 29 at 4, ¶ 9. Three days later, plaintiff was seen by Dr. Baker, who again x-rayed plaintiff's mouth, performed a root canal, and prescribed Vicodin and Keflex. Dkt. No. 31 at 3, ¶ 5; Dkt. No. 41 at 8. Plaintiff registered no serious dental complaints after this examination, Dkt. No. 31 at 3, ¶ 5; Dkt. No. 30 at 4, ¶ 7; Dkt. No. 29 at 4, ¶ 9, although he did file a kite regarding a "bad tooth" on April 15, 2007, for which he received a free teeth cleaning by Dr. Baker on April 18, 2007. Dkt. No. 30 at 5, ¶ 9.

---

[5] Inmate dental care at the Jail is prioritized by urgency of need. Dkt. No. 29 at 4, ¶ 9; Dkt. No. 30 at 3, ¶ 6; Dkt. No. 31 at 2, ¶ 4. Jail nurses respond to kites and assess each inmate's dental problem according to criteria determined by the Jail dentist, Dr. Baker. Dkt. No. 30 at 3, ¶ 6; Dkt. No. 31 at 2, ¶ 4. When an inmate's symptoms include active infection, swelling, pain, trouble sleeping, and a fever, he or she is designated as "Priority 1" and emergency dental measures are taken. Dkt. No. 31 at 2, ¶ 4. A "Priority 2" designation refers to uncomfortable, but not emergent or life-threating dental needs. *Id.* Priority 2 inmates are started on antibiotics, given pain medication, and placed on the schedule for the next Jail dental visit day. *Id.* at 2-3, ¶ 4. A "Priority 3" inmate has no urgent dental need and is placed on the waiting list, to be seen at the next available appointment—generally within one to two weeks. *Id.* Dr. Baker works at the Jail one day per week, where he (along with two dental assistants) sees approximately three patients per hour, twenty-five to thirty a day. *Id.* at 2, ¶ 3.

REPORT AND RECOMMENDATION
PAGE – 4

### III.   SUMMARY JUDGMENT STANDARD

"Claims lacking merit may be dealt with through summary judgment" under Rule 56 of the Federal Rules of Civil Procedure. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002). Summary judgment "shall be entered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). An issue of fact is "genuine" if it constitutes evidence with which "a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). That genuine issue of fact is "material" if it "might affect the outcome of the suit under the governing law." *Id.*

When applying these standards, the Court must view the evidence and draw reasonable inferences therefrom in the light most favorable to the nonmoving party. *United States v. Johnson Controls, Inc.*, 457 F.3d 1009, 1013 (9th Cir. 2006). The moving party can carry its initial burden by producing affirmative evidence that negates an essential element of the nonmovant's case, or by establishing that the nonmovant lacks the quantum of evidence needed to satisfy his burden of persuasion at trial. *Block v. City of Los Angeles*, 253 F.3d 410, 416 (9th Cir. 2001).

Once this has occurred, the procedural burden shifts to the party opposing summary judgment, who must go beyond the pleadings and affirmatively establish a genuine issue on the merits of his case. Fed. R. Civ. P. 56(e). The nonmovant must do more than simply deny the veracity of everything offered or show a mere "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The mere existence of a scintilla of evidence is likewise insufficient to create a genuine factual dispute. *Anderson*, 477 U.S. at 252. To avoid summary judgment, the nonmoving party must, in the words of the Rule, "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). The nonmoving party's failure of proof "renders all other facts immaterial,"

REPORT AND RECOMMENDATION
PAGE – 5

creating no genuine issue of fact and thereby entitling the moving party to the summary judgment it sought. *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986).

## IV. DISCUSSION

### A. Exhaustion Requirement Under the Prison Litigation Reform Act

Defendants first argue that certain of plaintiff's claims, such as his dental care claim, should be dismissed—apparently, *with* prejudice—for failure to exhaust the three-tier administrative grievance procedure provided by the Jail. *See* Dkt. No. 28 at 17-18, 24.

The Prison Litigation Reform Act ("PLRA") expressly provides that, "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Those remedies "need not meet federal standards, nor must they be plain, speedy, and effective." *Porter v. Nussle*, 534 U.S. 516, 524 (2002) (internal quotation omitted). Even when the prisoner seeks relief not available in grievance proceedings, i.e., money damages, exhaustion is a prerequisite to suit. *Id.*; *Booth v. Churner*, 532 U.S. 731, 741 (2001). "If the district court concludes that the prisoner has not exhausted nonjudicial remedies, the proper remedy is dismissal of the claim *without* prejudice." *Wyatt v. Terhune*, 315 F.3d 1108, 1120 (9th Cir. 2003) (emphasis added).

Non-exhaustion under § 1997e(a) is an affirmative defense. *Jones v. Bock*, ___U.S. ___, 127 S. Ct. 910, 919 (2007). The Ninth Circuit has unequivocally stated that non-exhaustion should be treated as a matter of abatement and brought in an unenumerated Rule 12(b) motion, rather than a motion for summary judgment. *Wyatt*, 315 F.3d at 1119.[6] Section 1997e(a) does not contain any exceptions to the statutory exhaustion requirement, and a court

---

[6] The main difference between an unenumerated motion to dismiss and a motion for summary judgment is that in ruling on the former, the Court may decide disputed issues of fact. Also, if an unenumerated motion is granted the dismissal is without prejudice, rather than the dismissal with prejudice that would follow the grant of a summary judgment motion.

REPORT AND RECOMMENDATION
PAGE – 6

generally does not have discretion to waive or excuse exhaustion in the interests of justice. *Booth*, 532 U.S. at 741 n.6 ("[W]e stress the point . . . that we will not read futility or other exceptions into statutory exhaustion requirements where Congress has provided otherwise."). If, however, the prisoner's claim is frivolous, has no merit, fails to state a cognizable claim, or is brought against defendants who enjoy immunity from suit, the Court may dismiss the complaint with prejudice, without requiring exhaustion. 42 U.S.C. § 1997e(c)(2); *see also Steele v. Fed. Bureau of Prisons*, 355 F.3d 1204, 1213 (10th Cir. 2003). Because plaintiff's complaint fails on its merits as discussed below, the Court accepts that PLRA's exhaustion requirement was met, and proceeds in its analysis.

        B.      <u>Eighth Amendment's Prohibition of Cruel and Unusual Punishment</u>

"It is undisputed that the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." *Helling v. McKinney*, 509 U.S. 25, 31 (1993).[7] The government has an obligation under the Eighth and Fourteenth Amendments "to provide medical care for those whom it punishes by incarceration." *Lopez v. Smith*, 203 F.3d 1122, 1131 (9th Cir. 2000) (en banc). However, not every breach of that duty is of constitutional proportion. "In order to violate the Eighth Amendment proscription against cruel and unusual punishment, there must be a deliberate indifference to serious medical needs of prisoners." *Hutchinson v. United States*, 838 F.2d 390, 394 (9th Cir. 1988) (internal quotation omitted). The requisite indifference occurs when a prison official denies, delays, or intentionally interferes with medical treatment due a prisoner or pretrial detainee. *Lopez*, 203 F.3d at 1131. Mere negligence in diagnosing or treating a

---

[7] The Eighth Amendment's prohibition of "cruel and unusual punishments" applies only after conviction and sentence. *Graham v. Connor*, 490 U.S. 386, 393 & n.6 (1989). In all other instances, cruel and unusual punishment claims arise under the Due Process Clause of the Fourteenth Amendment. *Oregon Advocacy Ctr. v. Mink*, 322 F.3d 1101, 1120 (9th Cir. 2003). However, "the due process clause imposes, *at a minimum*, the same duty the Eighth Amendment imposes: persons in custody ha[ve] the established right to not have officials remain deliberately indifferent to their serious medical needs." *Gibson v. County of Washoe*, 290 F.3d 1175, 1187 (9th Cir. 2002) (emphasis added) (internal quotation omitted).

REPORT AND RECOMMENDATION
PAGE – 7

medical condition is insufficient; a showing of deliberate indifference is required. *Id.*

To meet the deliberate indifference requirement under the Eighth Amendment, "a prisoner must satisfy both the objective and subjective components of a two-part test." *Hallett v. Morgan*, 296 F.3d 732, 744 (9th Cir. 2002). "[T]he plaintiff must first show a 'serious medical need' by demonstrating that failure to treat a prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain.'" *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (quoting *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1991), *overruled on other grounds by WMX Techs., Inc. v. Miller*, 104 F.3d 1133 (9th Cir. 1997) (en banc)). Second, the plaintiff must show that the defendant's response to the plaintiff's serious medical needs was "deliberately indifferent," i.e., that the defendant knew of but disregarded an excessive risk to those needs. *Farmer v. Brennan*, 511 U.S. 825, 837, (1994); *Toguchi v. Chung*, 391 F.3d 1051, 1057 (9th Cir. 2004). "If a [prison official] should have been aware of the risk, but was not, then the [official] has not violated the Eighth Amendment, no matter how severe the risk." *Toguchi*, 391 F.3d at 1057 (internal quotation omitted). That said, a plaintiff may rely on circumstantial evidence to prove a prison official's knowledge of the risk; the very obviousness of the risk may be sufficient to establish knowledge. *Wallis v. Baldwin*, 70 F.3d 1074, 1077 (9th Cir. 1995).

### 1. *Plaintiff's Medical Needs Were Sufficiently Serious*

The "routine discomfort" that results from incarceration does not constitute a serious medical need. *Doty v. County of Lassen*, 37 F.3d 540, 546 (9th Cir. 1994). Rather, such a need exists "if the failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain." *Id.* (internal quotation omitted); *Clement v. Gomez*, 298 F.3d 898, 904 (9th Cir. 2002) (same). "Examples of serious medical needs include '[t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain.'" *Lopez*,

203 F.3d at 1131 (quoting *McGuckin*, 974 F.2d at 1059-60).

In the present case, while defendants argue that plaintiff received constitutionally sufficient medical care, they spend little time arguing that plaintiff's medical needs were not serious. *See* Dkt. No. 44 at 7. It is largely undisputed that plaintiff suffered from PTSD, back problems, neck problems, and dental pain, for which he was prescribed Amitriptyline, Prazosin, Vicodin, and Keflex on multiple occasions. *See supra*, at 3-4. Furthermore, while defendants stress the fact that plaintiff came to the Jail with many of these ailments, they cite no authority for the proposition that pre-existing medical needs are never "serious," or cannot become serious, for example, when left untreated by prison medical staff. Viewing the facts in a light most favorable to plaintiff as the nonmovant, the record reflects that plaintiff's numerous maladies caused him considerable pain and affected some of his daily activities. Indeed, these conditions were serious enough that Jail medical staff deemed treatment necessary. *See Lopez*, 203 F.3d at 1131; *see also supra* at 3-4. The Jail's action therefore *supports* the conclusion that the failure to treat plaintiff's condition "could [have] result[ed] in further significant injury." *Clement*, 298 F.3d at 904. Accordingly, plaintiff has met step one of the deliberate indifference test.

>    2.    *Defendants Were Not Deliberately Indifferent to Plaintiff's Serious Medical Needs*

To complete a showing of deliberate indifference to serious medical needs, a prisoner must show more than mere negligence, or even gross negligence, on the part of the defendant. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Wood v. Housewright*, 900 F.2d 1332, 1334 (9th Cir. 1990). Prison officials are deliberately indifferent to a prisoner's serious medical needs only when they "deny, delay or intentionally interfere" with a prisoner's prescribed medical treatment. *Wood*, 900 F.2d at 1334; *Lopez*, 203 F.3d at 1132. To satisfy the second prong of the deliberate indifference test, it must be shown that the named prison officials knew of but disregarded an excessive risk to plaintiff's serious medical needs. *Farmer*, 511 U.S. at 837.

"This is not an easy test for plaintiffs to satisfy." *Hallett*, 296 F.3d at 745.

Plaintiff does not deny that he was afforded medical, dental, and mental health care. Nor does he allege that this care, once provided, was deficient. Indeed, the opposite is true. *See, e.g.*, Dkt. No. 41 at 5-6 (Plaintiff's Response Brief) (stating that, during his October 10, 2006 evaluation, "I received all of my medications as prescribed by my physicians[,] . . . was given 2 extra blankets to help pad my back and hip," and that defendant Behner "was very nice and could not do enough to assist in my comfort."), *and id.* ("After a very rewarding [psychiatric] consult" on October 11, 2006, "the doctor told me . . . that I have acute P.T.S.D." and "prescribe[d] Prazosin. . . . So far I can say that the medication helps considerably."). Instead, the gravamen of plaintiff's claim is that the care provided was unconstitutionally delayed.

The defendants do not directly address this alleged delay in treatment, which spanned the fourteen days between September 4, 2006 and September 21, 2006. When a prisoner alleges that delay of medical treatment amounts to deliberate indifference, he must show that the delay led to further injury. *McGuckin*, 974 F.2d at 1060; *Shapley v. Nevada Bd. of State Prison Comm'rs*, 766 F.2d 404, 407 (9th Cir. 1985) (per curiam). Plaintiff has not asserted injury from this alleged two week break in Jail medical staff visits, nor is one apparent from the record. Such delay in seeing health care treatment is comparable to the typical delay in the medical community at large. Furthermore, the evidence of record, viewed in a light most favorable to plaintiff, reveals that plaintiff's condition did not require emergency attention, and that defendants did not deny all medical treatment during this two-week period: by September 13, 2006, Jail medical staff had already examined plaintiff, referred him to a psychiatric nurse, and placed him on the medical provider appointment list. Dkt. No. 30 at 4-5, ¶ 8. The evidence of record is undisputed that shortly after plaintiff began filing kites—a mere day after booking—his concerns were addressed, his health conditions were examined, and his prescriptions were provided. Consequently, any genuine factual dispute regarding plaintiff's

REPORT AND RECOMMENDATION
PAGE – 10

screening answers during booking, while perhaps genuine, is not material, making summary judgment appropriate. *See Anderson*, 477 U.S. at 248 (genuine issue of fact is "material" only if it "might affect the outcome of the suit under the governing law").

Even assuming, for the sake of argument, that the delay in this case was constitutionally significant, plaintiff has failed to show that it led to any further injury, as required by Ninth Circuit law. *McGuckin*, 974 F.2d at 1060; *Berry v. Bunnell*, 39 F.3d 1056, 1057 (9th Cir. 1994); *Shapley*, 766 F.2d at 407. Plaintiff has provided no medical evidence to show how he was harmed by not being provided with immediate medications or how any alleged damage or pain was proximately caused by any deliberate medical indifference by defendants Oster, Behner, Pendry, or Howard. *Contra Hunt v. Dental Dep't*, 865 F.2d 198, 199 (9th Cir. 1989) (three month delay in replacing dentures, causing gum disease and weight loss, constituted Eighth Amendment violation).[8] At best, Plaintiff appears to be complaining that he was not treated in a manner that he wished to be treated, which raises questions under tort law, not the Constitution or § 1983. *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989). In sum, the deprivations alleged do not reach constitutional dimensions.

## V. CONCLUSION

The Court does not doubt that plaintiff has experienced some mental and physical health problems during his stay at Snohomish County Jail. Nor does the Court doubt that plaintiff's condition required the health care services he eventually received. However, as matter of law, the defendants were not deliberately indifferent to plaintiff's serious medical needs of which they were aware. For that reason, their conduct was not repugnant to the Eighth Amendment. Accordingly, and for the foregoing reasons, the Court recommends that defendants' Motion for Summary Judgment (Dkt. No. 28) be GRANTED and plaintiff's § 1983 complaint (Dkt. No. 6) DISMISSED with prejudice. As a result, plaintiff's proposed

---

[8] The Court notes that plaintiff failed to even address the actions of defendants Pendry or Howard in his response brief.

REPORT AND RECOMMENDATION
PAGE – 11

motion for an extension of time to conduct discovery and file dispositive motions may be DENIED as MOOT. A proposed order accompanies this Report and Recommendation.

DATED this 30th day of July, 2007.

*James P. Donohue*

JAMES P. DONOHUE
United States Magistrate Judge

REPORT AND RECOMMENDATION
PAGE – 12